IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**STEPHEN D. MASSEY,**

**Plaintiff,**

**v.**                                                                            **No. 05-CV-598-DRH**

**CASSENS & SONS, INC., et. al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

### I. Introduction and Background

On October 12, 2005, Plaintiff Stephen D. Massey ("Massey") filed his Amended Complaint against multiple defendants including KSC Leasing, LLC ("KSC Leasing"). (Doc. 24). The Complaint alleges various causes of action stemming from injuries Massey sustained on September 15, 2004, while operating a rig during his course of employment with Cassens Transport Company ("Cassens Transport"). The Complaint charges that KSC Leasing was "the owner and lessor of the trailor in question." (Doc. 24, paragraph 6).

On August 16, 2006, KSC Leasing filed its Motion for Summary Judgment. (Doc. 90). With its Motion, KSC Leasing put forward evidence demonstrating that it is merely a financial lessor to Cassens Transport, not a commercial lessor, and therefore strict liability is inappropriate under Illinois law.

Because the Court agrees that KSC Leasing was a financial lessor to Cassens Transport, and that financial lessors are not strictly liable for injuries arising from the products they finance, KSC Leasing's Motion for Summary Judgment is **GRANTED**.

## II. Analysis

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997)** (citing *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997)** (citing *Celotex*, **477 U.S. at 323**). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, **877 F. Supp. 1114, 1124 (N.D. Ill. 1995) (Castillo, J.)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th Cir. 1998)** (citing *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings. Rather, she must show through

specific evidence that an issue of fact remains on matters for which she bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd,* **51 F.3d 276** (citing *Celotex,* **477 U.S. at 324**). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson,* **477 U.S. at 249-50** (citations omitted); *accord* ***Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996)**; ***Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." ***Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997)** . Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)**. However, when all the Court has before it are the diametrically opposed statements of the parties on the critical and ultimate issues of fact, the Court, not in a position to make credibility findings, must pass the case to the next phase of litigation.

Illinois courts have long held that sellers of defective products may be strictly liable for injuries sustained by those products. The imposition of strict liability for retailers is justified due to their "integral role in the overall producing and marketing" of the defective product. ***Dunham v. Vaughan & Bushnell Mfg. Co.*, 247 N.E.2d 401, 404 (Ill. 1969).** In *Crowe v. Public Bldg. Com.,* the Illinois

3

Supreme Court extended the imposition of strict liability to commercial lessors:

> Typically, the commercial lessor is within the original chain of distribution and reaps a profit by placing a product in the stream of commerce. At the point in the chain of distribution where the product passes through the hands of the lessor, he becomes as capable as a seller to prevent a defective product from proceeding through the stream of commerce. . . . Consequently, the public policy rationale which justifies the use of strict liability as a means of shifting the burden of initial loss from the injured user applies with equal force whether the defective product is placed in the stream of commerce by a seller or by a lesser.

**383 N.E.2d 951 (Ill. 1978)**.

Four years later, and before Illinois courts had the opportunity to consider the question, the United States District Court for the Northern District of Illinois, Eastern Division, made the distinction between "commercial lessors," to which strict liability undoubtedly applied, and "financial lessors," who were not subject to strict liability. ***Abco Metals Corp. v. J.W. Imports Co., Inc.***, **560 F. Supp. 125 (N.D. Ill. 1982).** The court noted that the normal commercial lessor "is someone who rents a product to its customer for a relatively short period, with the expectation that the product will be returned at the completion of the term of the lease and, perhaps, then leased to other, future customers." *Id*. **at 130**. The Hertz Corporation's rental car services are typical of a commercial lessor's operations. *Id*. On the other hand, a financial lessor "does not actually provide the equipment to the lessee, but rather provides the money which allows the user of already selected equipment to purchase it." *Id*. **at 131**. The court explained:

> To a substantial extent, a financial lessor may be analogized to a bank

>that loans money to its clients. Rather than simply loaning the money for the purchase to the ultimate user of the equipment, the transaction is set up as a "lease," with the lessor "purchasing" the equipment for the specific purpose of "renting" it to the user. . . . Normally, the lessor has no familiarity with the particular equipment involved, and rarely does the lessor intend to take possession of the equipment when the lease term is completed.

*Id.*

After determining that the defendant was a financial lessor and not a commercial lessor, the court held that the traditional reasons for applying strict liability were not applicable in the financial lessor relationship, and as such defendant's motion for summary judgment was granted. *Id.* **at 134**. This holding was affirmed on appeal. **721 F.2d 583 (7th Cir. 1983) ("The inescapable conclusion is that [defendant] had no input into the production or marketing of this machine. It was not, therefore, in the original chain of distribution and was not a party capable of preventing a defective product from entering the stream of commerce. Any profit it reaped derived from having placed its money, and not the defective product, into the stream of commerce.")**.

Since these federal decisions, Illinois courts have confirmed the relevant distinction between a commercial lessor and a financial lessor, with strict liability attaching to the former but not the latter. ***See, e.g., Rivera v. Mahogony Corp.*, 494 N.E.2d 660 (Ill. App. 1986) (holding strict liability inapplicable to a "clearly financial lessor" when lessee had already selected model for leased equipment, lessor was not familiar with the equipment as it was outside the scope of its usual business, and parties signed lease agreement giving lessee the option to**

5

**buy the equipment at the end of the lease term**); *Beattie v. Lindelof*, 633 N.E.2d 1227, 1234 (Ill. App. 1994) ("**Illinois law is clear that no strict tort liability can exist for a financial lessor because any profit derived from the product results from placing its money rather than the defective product into the stream of commerce.**").

Applying the law to the facts, the Court finds KSC Leasing was a financial lessor to Cassens Transport with respect to the trailer allegedly causing Massey's injuries, and as such strict liability is inappropriate. The agreement between the parties, labeled "TRUCK TRACTOR AND TRAILER LEASE AGREEMENT," provides, among other things, that: 1) "LESSEE shall have complete freedom and control over the use and operation of both the tractors and the trailers" (¶ 6); 2) "LESSEE shall be totally responsible for selecting, hiring, training, and supervising its employees and drivers. LESSEE'S drivers and employees are not and shall not be agents of LESSOR, nor shall LESSOR be responsible in any way for their acts or omissions. LESSOR is in no way responsible to select, hire, or supervise the employees or drivers of LESSEE" (¶ 7); and (3) upon termination of the lease, lessee Cassens Transport had the option to purchase from lessor KSC Leasing any and all equipment subject to the lease (¶ 11). (Doc. 90, Exhibit 5). Further, in her Affadavit, Kay Cassens, President of KSC Leasing, testified that KSC Leasing had no involvement in selecting or specifying what type of equipment Cassens Transport used and had no control over the trailers or operations of Cassens Transport on a

6

day to day basis. (Doc. 90, Exhibit 6). In fact, Kay Cassens has never even seen the trailer which allegedly caused Mr. Massey's injuries, and she has no actual knowledge of any injuries sustained by drivers of Cassens Transport as a result of their use of equipment leased by KSC Leasing. *Id*. None of these facts are controverted by Massey.

These facts convince the Court that KSC Leasing's role in the trailer and tractor operations of Cassens Transport was limited to that of financier; it did not place a defective trailer into the stream of commerce, but only its money. A rental car company such as Hertz Corporation is a clear commercial lessor: it has substantial knowledge of the car industry, is able to examine its products on a daily basis before leasing them to customers, and rents its cars out for only a limited time, expecting their timely return. In contrast, KSC Leasing had little to no knowledge of the equipment it financed to Cassens Transport, no maintenance of the trailers or control over their daily operations, and the leasing agreement between the parties gave Cassens Transport the ability to buy the equipment upon expiration of the lease. This arrangement more accurately describes a financial lessor relationship than a commercial lessor relationship. Per Illinois law, the imposition of strict liability is inappropriate.

With regard to the general negligence claim, while Illinois courts have not addressed the issue, this Court is persuaded by other jurisdictions which have determined that financial lessors do not owe a legal duty to persons using the equipment that is the subject to the lease. ***See Long v. Tokai Bank*, 682 N.E.2d**

1052, 1060 (Ohio Ct. App. 1996); *Starobin v. Niagara Machine & Tool Works Corp.*, **172 A.D.2d 64, 66 (N.Y. App. Div. 1991)**. The Court finds the same rationale for denying imposition of strict liability to financial lessors supports the finding that financial lessors have no general duty of care to persons who may eventually use the leased equipment, and Massey fails to provide any authority in any jurisdiction which would support a contrary finding.

### III. Conclusion

Based on the record and case law, this Court **GRANTS** Defendant KSC Leasing's Motion for Summary Judgment. (Doc. 90). The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of KSC Leasing and against Plaintiff Stephen Massey on Counts I, II, III, and VIII at the close of the case.

**IT IS SO ORDERED.**

Signed this 12th day of March, 2007.

/s/     David    RHerndon
**United States District Judge**