IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**STEPHEN D. MASSEY,**

**Plaintiff,**

**v.**                                                            **No. 05-CV-598-DRH**

**CASSENS & SONS, INC., et. al.,**

**Defendants.**

### MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction and Background

On October 12, 2005, Plaintiff Stephen D. Massey ("Plaintiff") filed his Amended Complaint against multiple defendants including Cassens & Sons, Inc. ("CS"). (Doc. 24). The Complaint alleges various causes of action stemming from injuries Plaintiff sustained on September 15, 2004, while operating a rig during his course of employment with Cassens Transport Company ("Cassens Transport"). The Complaint charges that CS "sold and placed into the stream of commerce" rigs in the Cassens Transport fleet. (Doc. 24, ¶ 5).

At this point, all named Defendants in this matter, except for CS, have been terminated by agreement or by an order of this Court. Now before the Court are

three pending motions: CS's motion for summary judgment (Doc. 180); Plaintiff's motion to strike affidavit (Doc. 202); and Plaintiff's renewed motion to remand (Doc, 206). Before reviewing the motion for summary judgement (Doc. 180), the Court must begin by considering Plaintiff's renewed motion to remand. (Doc. 206.)

## II. Plaintiff's Renewed Motion to Remand

On July 7, 2007, Plaintiff filed a renewed motion to remand (Doc. 206) requesting that the Court reconsider its February 16, 2006 Order (Doc. 58) denying Plaintiff's motion to remand in light of a recent Seventh Circuit opinion, **Holmstrom v. Peterson, 492 F.3d 833 (7th Cir. July 3, 2007)**. The remand-related facts in **Holmstrom** are very similar to the facts in the present case. In both cases removal was predicated on diversity, an unserved defendant sought to remove the case to federal court prior to any defendant being served, and a non-diverse, unserved defendant was present. The district court judge in **Holmstrom** held that while the presence of an unserved resident defendant normally does not defeat removal, that fact, when coupled with the fact that the removing defendant itself had not itself been served, was sufficient to warrant remand. **Holmstrom v. Harad, 2005 WL 1950672 (N.D. Ill. Aug. 11, 2005) (Aspen, J.)**. In the February 16, 2006 Order (Doc. 58), this Court disagreed with the district court in **Holmstrom**:

> While an argument can be made that the likely policy underlying the "joined-and-served" requirement is not implicated by the current facts, the Court is constrained by the language of **28 U.S.C. § 1441**. That language is clear and unambiguous: where complete diversity is present — as it is in this case — only the presence of a "joined-and-served" resident defendant defeats removal. **28 U.S.C. § 1441(b)**. Here, no

2

such defendant was present when this case was removed.  The statute contains no proviso, and, given its clarity, it is not this Court's role to insert one.  *See* **Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)**.  Nor is it this Court's place to require, contrary to at least the language of **28 U.S.C. § 1446(b)**, that a defendant be served prior to removal.  ***Id.***  Instead, this Court must be faithful to the language Congress actually employed.  In this instance, that language provides no basis for remand.

**(*Id.* at 7-8.)**

Plaintiff now argues that the Seventh Circuit's holding in ***Holmstrom*** somehow suggests that the district court in ***Holmstrom*** was correct to remand the case, because the Seventh Circuit found that the district court judge's application of the forum defendant rule was simply a "judicial gloss" rather than a "judicially crafted exception" to the rule.  Plaintiff seems to further suggest that had the Seventh Circuit found the district court's application to be a "judicially crafted exception" that the Seventh Circuit would have had subject matter jurisdiction to review the order and that it was only because the Seventh Circuit found the district court's application to be legitimate that it was forced to refrain from reviewing the order.  This Court believes that Plaintiff has read far too much into the Seventh Circuit's opinion.  In fact, it seems that the Seventh Circuit was quite clear that it was refraining from reviewing the district court's remand order because "any remand order falling within the scope of § 1447(c) lies outside our jurisdiction, regardless of the correctness of the district court's reasoning." ***Holmstrom*, 492 F.3d at 839**.  This is far from a ringing endorsement of the district court's approach.  This Court still disagrees with the district court in ***Holmstrom***.  Therefore, Plaintiff's renewed motion to remand

3

(Doc. 206) is **DENIED**.

### III. Plaintiff's Motion to Strike Affidavit

Plaintiff filed a motion to strike Clarence Brown's affidavit, or in the alternative, to depose Clarence Brown. (Doc. 202.) Mr. Brown's affidavit was attached as an exhibit in support of CS's motion for summary judgment. (See Doc. 180, Ex. B.) The affidavit attached to CS's motion for summary judgment was not signed. In Plaintiff's response in opposition to CS's motion for summary judgment, Plaintiff objected to the affidavit and moved to strike it. (Doc. 195.) CS then filed a motion to substitute exhibit. (Doc. 199.) CS's motion explained that the unsigned version of Mr. Brown's affidavit had inadvertently been attached to the motion for summary judgment and requested leave to substitute the executed affidavit of Clarence Brown, which was subscribed and sworn to on February 9, 2007. The Court granted CS leave to substitute the executed affidavit. (Doc. 201.) Plaintiff then filed the present motion to strike Clarence Brown's affidavit (Doc. 202), claiming that CS had misrepresented the facts to the Court and that the affidavit was not in fact signed on February 9, 2007, but rather on April 5, 2007 - the date CS filed its motion to amend. Plaintiff argued that the executed motion should be stricken because the affidavit was not executed as of the date of the filing of the motion for summary judgment and, therefore, was a nullity. In addition, Plaintiff argues that had Mr. Brown signed the affidavit, Plaintiff "almost certainly would have chosen to depose him, but, because he did not, this was unnecessary." (Doc. 202, p. 3.) Plaintiff

4

further posits that his response to the motion for summary judgment would have been different had Plaintiff been responding to a *signed* affidavit.

In response, CS explains that it had technical difficulties scanning the executed version of Mr. Brown's affidavit and finally attaches a correctly scanned version of Mr. Brown's affidavit showing that the affidavit was subscribed and sworn to on February 9, 2007. The Court understands that the date that was stamped on the earlier version of the affidavit was generated by the computer CS was using - it was not the date that the affidavit was signed. Striking this affidavit, which was signed by a notary public, would amount to the Court stating that the notary public lied and falsely dated the document. The Court refuses to do this. Therefore, the Court will not strike the substituted affidavit.

Furthermore, the Court finds Plaintiff's assertion that had the affidavit been signed, he would have deposed Mr. Brown, totally disingenuous. As CS points out, Mr. Brown submitted an affidavit in support of another Defendant's motion for summary judgment - yet Plaintiff never sought to depose him in relation to the other motion for summary judgment. It is simply hard to believe that Plaintiff did not depose Mr. Brown simply because his affidavit lacked a signature, particularly in light of the history of this and related cases against this same Defendant. For the foregoing reasons, the Court **DENIES** Plaintiff's motion to strike. (Doc. 202.)

## IV. CS's Motion for Summary Judgment

### A. Legal Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)** (citing ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)**). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. ***Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)** (citing ***Celotex*, 477 U.S. at 323**). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995) (Castillo, J.)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)** (citing ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings. Rather, she must show through specific evidence that an issue of fact remains on matters for which she bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276** (citing ***Celotex*, 477 U.S. at 324**). No issue remains for

6

trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." **Anderson, 477 U.S. at 249-50** (citations omitted); *accord* **Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir. 1996)**; **Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." **Weeks v. Samsung Heavy Indus. Co., 126 F.3d 926, 939 (7th Cir. 1997)** . Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. **Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 401 (7th Cir. 1997)**. However, when all the Court has before it are the diametrically opposed statements of the parties on the critical and ultimate issues of fact, the Court, not in a position to make credibility findings, must pass the case to the next phase of litigation.

    **B. Analysis**

Plaintiff alleges in Count I, II, and III of his Amended Complaint (Doc. 24) that Defendant CS is liable for his injuries based on claims of strict liability, negligence, and breach of implied warranty. Count VIII alleges a cause of action for exemplary damages based on the other claims. Plaintiff's employer, Cassens Transport, acquired a trailer from Defendant Cottrell for use in its vehicle hauling business. CS assisted Cassen Transport with the acquisition of the trailer. CS asserts that it did nothing more than act as a "paper shuffler" by handling "routine

7

transactional tasks such as: turning out the required documents for the transfer or acquisition of Illinois title; mailing or delivering such documents to appropriate recipients; handling the transfer of funds from trailer purchasers to Cottrell, Inc.; assigning certificates of origin to the trailer purchasers." (Doc. 181 at ¶ 18.) CS insists that it never selected or played any part in ordering or negotiating the terms of the contract for the purchase of trailers from Cottrell. (*Id*. at ¶ 19.) CS also maintains that it never made or derived any profits, brokerage fees, commissions of other benefits from acting as a facilitator for the transaction. These assertions are supported by an affidavit (Doc. 181, Ex. B) and other supporting documents (*Id*., Ex. D, E).

Plaintiff, on the other hand, disputes these assertions. However, the only evidence that Plaintiff presents in support of its argument that CS did more than it admits to facilitate the transaction is a deposition statement from Kay Cassens, President of KSC Leasing, that she buys the rigs "through Cassens and Sons." (Doc. 195 at ¶¶ 17, 18, and 19.) The fact that Ms. Cassens states that she bought the rigs through CS does not contradict the facts proffered by CS. CS does not deny that it assisted Cassens Transport in acquiring the rigs. In fact, it offers exhibits that confirm that it was billed for the rig and, in turn, billed Kay Cassens for the exact amount it paid for the rig. (Doc. 181, Ex. D, E.) Therefore, there is no genuinely disputed material fact. The question, therefore, is whether CS should be held liable given its limited role in this transaction.

Defendant CS argues in its motion for summary judgment (Doc. 181)

8

that it should not be held liable for the injuries Plaintiff incurred because CS was nothing more than a facilitator in the process. The Court agrees.

Plaintiff is correct in his assertion that in a products liability action "all persons in the distributive chain, including suppliers, distributors, wholesalers and retailers, are liable for injuries resulting from a defective product." ***Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 206, 454 N.E.2d 210, 216 (1983).** But Plaintiff argues that the "distributive chain" encompasses far more players than this Court believes is warranted. For example, as this Court found in its March 12, 2007 Order dismissing Defendant KSC Leasing. (Doc. 191), a financial lessor may not be liable for defects in a product, even though it may have financed the acquisition of the product. ***See Abco Metals Corp. v. J.W. Imports Co., Inc.*, 560 F. Supp. 125 (N.D. Ill. 1982).** As discussed in the March 12, 2007 Order, the court in ***Abco*** found that a financial lessor "does not actually provide the equipment to the lessee, but rather provides the money which allows the user of already selected equipment to purchase it." ***Id*. at 131**. The court explained:

> To a substantial extent, a financial lessor may be analogized to a bank that loans money to its clients. Rather than simply loaning the money for the purchase to the ultimate user of the equipment, the transaction is set up as a "lease," with the lessor "purchasing" the equipment for the specific purpose of "renting" it to the user. . . . Normally, the lessor has no familiarity with the particular equipment involved, and rarely does the lessor intend to take possession of the equipment when the lease term is completed.

*Id.*

After determining that the defendant was a financial lessor and not a

9

commercial lessor, the court held that the traditional reasons for applying strict liability were not applicable in the financial lessor relationship, and as such defendant's motion for summary judgment was granted. *Id*. **at 134**. This holding was affirmed on appeal. **721 F.2d 583 (7th Cir. 1983) ("The inescapable conclusion is that [defendant] had no input into the production or marketing of this machine. It was not, therefore, in the original chain of distribution and was not a party capable of preventing a defective product from entering the stream of commerce. Any profit it reaped derived from having placed its money, and not the defective product, into the stream of commerce.")**.

Applying the rationale the Seventh Circuit used in finding that the defendant in ***Abco*** could not be held strictly liable, the Court finds that CS likewise should not be held strictly liable. CS had no input into the production or marketing of the rig in this case. The manufacturer, Cottrell, has noted in other court documents that CS is nothing more than a "paper shuffler" in these transactions. (Doc. 147, p. 9.) Furthermore, Cottrell confirms that CS "has never been involved with or exercised control over the design or manufacture of any Cottrell vehicle transport trailers. . . ." (*Id*.) Lastly, other than being reimbursed for the bare costs of the transaction, CS never made any profit from the transaction. The Court agrees with CS that CS acted as nothing more than a broker in these transactions. Unfortunately, the Court is unable to find any Illinois Supreme Court or Seventh Circuit cases that address whether a broker/"paper shuffler" may be held strictly liable, but cases from other jurisdictions with similar facts are instructive. ***See***

***Balczon v. Machinery Wholesalers Corp.*, 993 F.Supp. 900 (W.D.Pa. 1998) (holding that Defendant, who acted as a broker, was not strictly liable under Pennsylvania law, which relies on Restatement (Second) of Torts § 402A, because it had no control or involvement in the manufacturing or designing the product, did not select the product for the ultimate buyer, made no representations regarding the product's quality, and never had physical possession of the product); *Ames v. Ford Motor Co.*, 299 F.Supp.2d 678 (S.D. Tex. 2003).** *Balczon* is particularly helpful because Pennsylvania law relies on the **Restatement (Second) of Torts § 402A**, as does Illinois. For all of these reasons, the Court finds that CS should not be held strictly liable. Furthermore, clearly CS is not a seller as alleged in Count III and, therefore, may not be held liable for any breach of implied warranty.

With regard to the general negligence claim (Count II), the Court finds the same rationale for denying imposition of strict liability on brokers and paper shufflers supports the finding that brokers and paper shufflers have no general duty of care to persons who may eventually use the leased equipment, and Massey fails to provide any authority in any jurisdiction which would support a contrary finding.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Renewed Motion to Remand (Doc. 206), **DENIES** Plaintiff's Motion to Strike Affidavit (Doc. 202), and **GRANTS** Defendant Cassens & Sons, Inc.'s Motion for Summary Judgment (Doc. 180) . The Court **DISMISSES** Counts I, II, III, and VIII against Defendant Cassens

& Sons, Inc. with prejudice. The Court notes, as previously stated, that all named defendants have been terminated from this case. However, there are two unknown defendants, Unknown Commercial Lessors in the Cassens Family and Unknown Trailer and Ratchet Component Distributors/Manufacturers, who remain. Neither of these two Defendants has ever been served. Therefore, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 4(m)**, the Court will dismiss the two unnamed Defendants without prejudice, unless the Plaintiff files a motion to voluntarily dismiss them with prejudice on or before September 21, 2007. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Cassens & Sons, Inc. and against Plaintiff Stephen Massey on Counts I, II, III, and VIII at the close of the case.

**IT IS SO ORDERED.**

Signed this 13th day of September, 2007.

/s/      DavidRHerndon
**United States District Judge**